IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Huf North America Automotive Parts    No. 3:13CV353
    Manufacturing Corp., et al.,

        Plaintiffs

      v.                                    **ORDER**

Falls Creek Powdered Metals, Inc., et al.,

        Defendants

    This is a suit by an insurance company for contribution against two suppliers of an automotive part called an anti-drill plate.[1]

    In 2012, named plaintiff Huf North America Automotive Parts Manufacturing Corporation (Huf), through its insurer, plaintiff XL Insurance America, Inc., settled a lawsuit alleging, *inter alia*, Huf had: 1) manufactured a defective ignition-lock system (lockset) containing a defectively designed anti-drill plate; and 2) sold the lockset to General Motors, which installed the system in a 2004 Saturn Vue that GM built.

    The suit contended the defective lockset proximately caused an accident in which a small child was able, even though there was no key in the ignition, to move the Saturn's gear shift from

---

[1] An anti-drill plate is a rectangular metal sheet that forms the four edges of the keyhole into which a driver inserts an ignition key. The plate prevents thieves from drilling through the key slot and starting the car without a key.

"park" to "neutral," thereby causing the Saturn to move backwards down a sloped driveway and crush the child, who had tried to get out of the vehicle when it started rolling.[2]

Huf now contends either Falls Creek Powdered Metals, Inc., or Brockaway Pressed Metals, Inc., manufactured the anti-drill plate for the lockset in the 2004 Vue involved in the underlying litigation.

Falls Creek, alleging that it 1) met Huf's specifications for the anti-drill plates it supplied to Huf, and, 2) in any event, was not the manufacturer of the anti-drill plate in the 2004 Vue, moves for summary judgment. (Doc. 31). For the following reasons, I deny the motion.

**Background**

From 1999 to 2007, Huf manufactured locksets systems for GM. Various suppliers provided the components Huf used to build those systems for sale to GM, which installed the lockset at issue in the 2004 Vue. The anti-drill plate was one of the components Huf included in the lockset.

The record shows Huf designed the anti-drill plates and contracted with the two defendants to supply the anti-drill plate.

Brockaway made Huf's anti-drill plates from 1999 until early January, 2003.

In late 2002, GM told Huf it had received field reports of excessive wear to vehicles' ignition keys. At the time, Huf's plates lacked a "radius," or a rounded edge, near the keyhole. Consequently,

---

[2] The case seeking recovery for the child's injuries was *Peffley et al. v. Saturn of Fort Wayne, Inc., et al.*, No. 3:09CV3022 (N.D. Ohio W.D.). After I denied Huf's motion for summary judgment, *Peffley v. Saturn Corp.*, 2012 WL 8888143 (N.D. Ohio), Huf, through XL, paid $1,250,000 to the plaintiffs. The dealer that sold the Vue to the child's parents, Saturn of Fort Wayne, likewise through its insurer The Netherlands Insurance Company, paid plaintiffs $750,000. Huf and XL bring this contribution action as subrogees of the defendants in the *Peffley* case.

drivers tended to slide their keys against the drill plate's sharp face when inserting the key into the ignition, thereby causing the key-wear problems Saturn drivers had reported.

To resolve the key-wear problem, Huf decided to add a "radius" to its anti-drill plates. It developed a new specification for the drill plate that called for a .2 millimeter radius on the front edge of the plate. It also required that the plate be free from "burrs and flash," two types of unwanted metallic protrusions that are common byproducts of goods manufactured in the powdered-metal industry. (Doc. 46-25 at 4).

In the meantime, Huf instructed Brockaway to transfer the tooling it had used to make the anti-drill plates to Falls Creek, Huf's new supplier.

Huf placed its last order with Brockaway, for 21,170 anti-drill plates, on January 7, 2003.

After Huf had made its final modifications to the new anti-drill plate, Falls Creek began working to modify the tooling it had received from Brockaway.

When it had done so, Falls Creek submitted a redesigned tooling plan to Huf and GM for approval. As part of that process, Falls Creek represented it had produced a test batch of anti-drill plates, and that the samples conformed to Huf's .2-millimeter-radius specification.

Huf and GM approved the plans, and Falls Creek began making anti-drill plates in April, 2003.

Between April 21 and September 16, 2003, Huf purchased 70,030 anti-drill plates from Falls Creek.

Huf did not keep a large stock of plates on hand at any one time; rather, after Huf purchased a batch of anti-drill plates, it used that batch of plates within the next two to four weeks. To manage its lockset components inventory, Huf used the first-in, first-out rule, an accounting principle that

3

presumes a company uses its oldest inventory before starting to work with more recently acquired materials.

Huf's records show that, in mid-2003, it received roughly 2,100 anti-drill plates weekly from Falls Creek, and weekly produced about 2,300 locksets.

From April to September, 2003, Huf sold roughly 70,000 ignition-lockset systems to Saturn.

Saturn, as is common in the automobile industry, used a "just in time" process with its suppliers. Thereby it tended not to keep a large supply of ignition locksets on hand. Rather, three months before it anticipated placing an order, Saturn provided Huf with a rough estimate of how many locksets it would need. Then, within four to six weeks of the anticipated order date, Saturn would give Huf a firm commitment.

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## Discussion

### A. Compliance with Huf's Specifications

Falls Creek first argues the evidence is undisputed the anti-drill plates it supplied to Huf met Huf's specifications.

Falls Creek points to testimony from its expert, Professional Engineer Kenneth S. Marshall, that there was no burr or flash on the plate Falls Creek made. Marshall also opined "the die used by Falls Creek could not made the anti-drill plate at issue" in the underlying *Peffley* litigation that the plaintiffs settled. (Doc. 31-1 at 2).

Huf has introduced expert testimony rebutting Falls Creek's claim.

Plaintiff's expert, Professional Engineer David Moore, stated he "completely disagree[s]" with Mr. Marshall's general understanding of what "the terms burr and flash" mean, and with his specific conclusion that the Falls Creek anti-drill plates did not exhibit burr and flash. (Doc. 46-25 at 7-8).

Moore further concluded that four anti-drill plates Falls Creek manufactured in 2003, after it had supposedly modified the tooling it received from Brockaway, did not include the radius mandated in Huf's specifications.

All of that shows, according to Moore, Falls Creek did not produce conforming plate.

As the Sixth Circuit has explained, these "competing expert opinions present the classic battle of the experts," and it will be "up to a jury to evaluate what weight and credibility each expert opinion deserves." *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005).

In addition, and consistent with Moore's opinion, Falls Creek has produced no evidence that it in fact modified the tooling it received from Brockaway.

Viewed in the light most favorable to plaintiffs, this evidence would support a jury finding Falls Creek failed to produce drill plates that complied with Huf's specifications.[3]

### B. Supplier of the Faulty Drill Plate

Falls Creek next argues no reasonable jury could find it supplied the anti-drill plate that made its way into the Peffleys' car.

This argument lacks merit.

First, plaintiff's expert concluded Falls Creek manufactured the faulty anti-drill plate.

Mr. Moore so opined after inspecting the plate from the 2004 Vue, reviewing pertinent records from the underlying *Peffley* litigation, and testing four additional drill plates Falls Creek manufactured after April, 2004.

This led Moore to conclude all five plates: 1) lacked a .2 millimeter radius; 2) showed signs of burr and flash; 3) exhibited a similar metallurgical hardness; and 4) consequently, were the product of Falls Creek's faulty manufacturing process.

Second, Huf's use of the first-in, first-out inventory system yields a strong inference Falls Creek made the faulty anti-drill plate.

Huf placed its last order with Brockaway, for 21,170 plates, in early January, 2003.

---

[3] In its reply brief, Falls Creek contends Huf is judicially estopped from arguing Falls Creek's plates did not conform to Huf's specifications. Falls Creek observes that, in the underlying suit, Huf argued it was not liable because its lockset system complied with GM's and Saturn's specification. But judicial estoppel does not apply unless there has been judicial acceptance of the position the party took in the earlier suit. *Boler Co. v. Watson & Chalin Mfg., Inc.*, 372 F. Supp. 2d 1013, 1020 (N.D. Ohio 2004), I never accepted Huf's position – indeed, I denied its motion for summary judgment – and the case later settled. For that reason, Falls Creek's argument finds no support in *Boler*. *See id.* at 1020-21 (judicial estoppel barred litigant from asserting contrary position in second patent lawsuit because, even though first patent suit settled, judge in first suit accepted litigant's position as a "preliminary matter").

Given the pace at which Huf went through anti-drill plates (roughly 2,000 per week), its tendency to use the plates within two to four weeks after receiving them, and its reliance on the first-in, first-out rule, Huf likely would have exhausted its supply of Brockaway plate around mid-April or early May, 2003.

Beginning in late April, 2003, Huf began receiving anti-drill plate exclusively from Falls Creek.

Finally, the record shows Saturn would not order locksets from Huf until four to six weeks before Saturn needed that component.

Because it is undisputed the 2004 Saturn Vue involved in the underlying lawsuit came off Saturn's assembly line on October 10, 2003, it would appear Saturn ordered the lockset containing the defective anti-drill plate in late August or early September – by which time Huf had long since exhausted its supply of Brockaway plate, and had long since been using only Falls Creek's plates.

If credited, this evidence would support a reasonable jury's determination Falls Creek, not Brockaway, manufactured the faulty plate.

### C. Comparative Negligence

Finally, Falls Creek alleges that, even if it had manufactured the defective plate, XL cannot recover from it.

This is so, Falls Creek argues, because the child's parents negligently left their son inside the car while failing to engage the parking brake. But for that negligence, which Falls Creek alleges contributed more than fifty percent to the cause of the child's injuries, the accident would not have happened.

"Weighing the respective negligence of a plaintiff and a defendant is a difficult task and should generally be within the province of a jury." *Robson v. Quentin E. Cadd Agency*, 179 Ohio App. 3d 298, 309 (2008). "Issues of comparative fault are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion." *Simmers v. Bentley Constr. Co.*, 64 Ohio St. 3d 642, 646 (1992).

Here, Falls Creek has not shown the only reasonable conclusion from the evidence is that the parents are more than fifty percent responsible for the accident.

Even assuming some negligence on the parents' part, a reasonable jury could find the greater fault lies with Falls Creek. The evidence in the underlying litigation suggests that, while the child was alone inside the Vue, the vehicle sat safely atop a sloped driveway, with the gearshift set to "park," the keys removed from the ignition, and both parents close at hand.

In these circumstances, a jury could find that a reasonable parent would not necessarily foresee a substantial risk that the Vue could begin rolling backwards down the driveway *and* the child would try to get out of the car as it did so, *and* that the car would roll over the child.

And given the evidence that a defective anti-drill plate, likely produced by Falls Creek, could enable the shift lever to move out of park even when the key was out of the ignition, a rational jury could find the supplier of that plate more than fifty percent at fault. This is so, even if somehow the jury found some negligence on the parents' part, and that such negligence played some role in causing the injuries to their child.

Summary judgment is therefore unwarranted on comparative-fault grounds.

**Conclusion**

It is, therefore

ORDERED THAT Falls Creek's motion for summary judgment (Doc. 31) be, and the same hereby is, denied.

The Clerk shall set a status conference forthwith.

So ordered.

/s/ James G. Carr<br>
Sr. U.S. District Judge